IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, | : |
| Plaintiff, | : |
| v. | : Case No. 2:19-CR-163(1) and (2) |
| YU ZHOU (1) | : JUDGE SARAH D. MORRISON |
| and | : |
| LI CHEN (2), | : |
| Defendants. | : |

## **OPINION & ORDER**

Before the Court is Defendant Yu Zhou's November 8, 2019 Motion for Bond (ECF No. 47) and the Government's November 15, 2019 Memorandum in Opposition (ECF No. 51) thereto. On November 19, 2019, the Court conducted a hearing on the motion. After due deliberation, and for the reasons set forth below, the Court **DENIES** the motion (ECF No. 47).

### I. BACKGROUND

The July 23, 2019 twenty-seven count Indictment asserts that Defendants Zhou and Chen, whom are married, each conducted exosome research for Nationwide Children's Hospital ("Nationwide") for approximately ten years. Exosomes "are small membrane-bound sacs that are produced by human cells that carry cell-derived components such as RNA, microRNA (or miRNA), and DNA." (ECF No. 6 at ¶ 4.) They "play a key role in the research, identification and treatment of a range of medical conditions including necrotizing enterocolitis (a condition found in premature babies)," and certain types of cancer. *Id*. During their employment at Nationwide, Zhou and Chen allegedly established three companies that conducted business related to

1

exosomes without Nationwide's notice or consent.  At least one of those entities conducted business in China, also without Nationwide's knowledge or approval. The Indictment alleges, *inter alia*, that Zhou and Chen, throughout the course of their employment at Nationwide, utilized those companies when stealing the trade secrets and violating the wire fraud statute. (ECF No. 6.)

Pursuant to the Indictment, arrest warrants were issued for both Zhou and Chen on July 23, 2019. (ECF No. 7.) Zhou was arrested the next day in San Diego, California, while Chen was arrested on July 29, 2019, also in San Diego, California. *Id*. 10, 11. On August 1, 2019, Zhou and Chen both stipulated without prejudice to the Government's oral motion to detain them. (19CR-163(1) ECF No. 13; 19CR-163(2) ECF No. 14.)  On August 13, 2019 Magistrate Judge Lopez ordered them removed to this District for further proceedings. *Id*.

Zhou and Chen each entered a not guilty plea at their subsequent September 16, 2019 arraignments before the Court. (19CR-163 ECF No. 26.) A detention hearing, conducted by Magistrate Jolson, immediately followed the arraignment. *Id*. 28, 30. During that hearing, the Government argued the defendants should be detained pending completion of trial because each posed a flight risk. *Id*. 37, 42. Magistrate Jolson heard arguments from each side and admitted sixteen exhibits from the Government and two exhibits from Chen. *Id*. She noted each Defendant had deep business and familial ties with the People's Republic of China ("PRC"). *Id*. at 29, 31, 37, 42. She commented that the Defendants have business connections with individuals in the PRC "who have access to governmental institutions" in the PRC. (ECF No. 42 at 36; ECF No. 37 at 19-20.) She noted that each Defendant had extensively traveled to the PRC in the last several years. (ECF Nos. 29, 31.) She also held that the Defendants had substantial financial resources here and in the PRC that would enable them to flee. She concurred with the Government's

observation that the United States does not have an extradition treaty with the PRC. While recognizing that the Defendants have a son attending medical school in Maryland, she determined that the son is an adult capable of caring for himself. She further determined that the Defendants have little to no ties with this District. In sum, Magistrate Jolson held that the Government carried its burden of proving by a preponderance of the evidence that the Defendants were flight risks and that there were no conditions of release sufficient to reasonably assure his presence going forward such that detention was necessary. (ECF Nos. 29, 31.)

Zhou's present Motion for Bond first asserts the detention order should cease because there are conditions of release that would reasonably assure his presence at future court proceedings. (ECF No. 47 at 2.) Specifically, Zhou proffers that his ability to post $1,000,000 in bond secured by his home in California as well as his placement under pre-trial supervision and electronic monitoring should be sufficient to "alleviate[] . . . the Government's concerns regarding risk of flight." (ECF No. 47 at 9.) He additionally contends that both the volume and complexity of the Government's discovery productions, in combination with the anticipated protective order, Zhou's incarceration in Ohio, and his counsel's Illinois location are preventing "a meaningful, complete or thorough review of the discovery that is required for his defense." *Id*. As such, Zhou argues, detention is depriving him of due process and effective assistance of counsel in violation of the Fifth, Sixth and Eighth Amendments to the United States Constitution. *Id*. at 2-4, 9-10.

The Government, in contrast, notes that nothing has changed since Magistrate Jolson's determination that detention was necessary. (ECF No. 51 at 1.) The charges are serious and present Zhou with the possibility of substantial jail time if convicted, thus providing Zhou with an incentive to flee. *Id*. Zhou's personal, professional, and governmental ties to the PRC remain

strong. Zhou maintains significant assets that enable him to flee. *Id*. And, extradition from China is still not an option. For these reasons, the Government asserts that Zhou continues to present an "incurable" risk of flight such that detention remains necessary and proper. *Id*. at 6. The Government addresses Zhou's constitutional concerns by contending that they are not ripe, and that even if they are, those arguments fail because his three-and-one-half month pretrial detention does not violate the Due Process Clause under the controlling analysis. *Id*. at 16-20.

## II. THE COURT'S *DE NOVO* HEARING

The Government carried its "nothing has changed" theme from its opposition through to its oral argument. While largely duplicative of its argument before Magistrate Jolson, the Government did introduce additional exhibits to support its contention that Zhou poses an irredeemable risk of flight. Those include a receipt of payment to Zhou by the PRU in exchange for Zhou's work for the PRU under a "talent plan." (Ex. 8.) The Government asserts that talent plans are the PRC's method of recruiting experts to steal trade secrets and then to provide the stolen information to the PRC in exchange for payment. (ECF No. 51 at 6 n. 2.) Next, the Government proffered an evaluation for work performed by Chen in the PRU that referenced the Defendants' Chinese Company, Beijing Jieteng Biotech and described Zhou as the project's leader. (Ex. 9.) The work was performed when both were still employed by Nationwide. The third is a recommendation letter for Chen written by Zhou that mentions her exosome extraction research, which is the subject of Trade Secret 1. (Ex. 10.)

Zhou's rebuttal likewise differed little from his argument before Magistrate Jolson. While Attorney Seiden did mention his due process contention, he did so only in the context of the amount of discovery produced and to be produced. He did not address the relevant analytical factors.

## III. STATUTORY ANALYSIS

### A. Legal Standard

Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." Yet, subsequent review is not automatic. Rather, 18 U.S.C. § 3142(f)(2)(B) permits the reopening of a pretrial detention hearing only because of new information material to the risk of flight that was "not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *United States v. Jerdine*, No. 1:08 CR 00481, 2009 U.S. Dist. LEXIS 117919, at *6-8 (N.D. Ohio Dec. 18, 2009) (citing *United States v. Rodriguez-Adorno*, 606 F.Supp. 2d 232, 239 (D.P.R. 2009)). The statutory provision authorizing the reopening of a detention hearing is strictly interpreted such that "hearings should not be reopened if the evidence proffered was available at the time of the hearing." *United States v. Jerdine*, No. 1:08 CR 00481, 2009 U.S. Dist. LEXIS 117919 (citing cases).

That requirement is not satisfied here. Namely, Zhou's Motion for Bond regurgitates his arguments from the detention hearing before Magistrate Jolson; nothing contained in the present motion, or argued at this Court's hearing, constitutes "truly changed circumstances, something unexpected, or a significant event." Both his offer to remain in his San Diego home pending trial and his due process concerns regarding potential length of detention before trial given the nature

and complexity of the charges against him were arguments readily available to him at the original hearing. Thus, the noted contentions are presently insufficient to trigger reconsideration under § 3142(f)(2)(B). *See United States v. Hazelwood*, No. 1:10 CR 150, 2011 U.S. Dist. LEXIS 21399, at *9 (N.D. Ohio Feb. 16, 2011) ("To the extent [Defendant's] Motion reiterates the same grounds for home detention as were raised in previous motions and at his prior hearing, the court rejects those arguments and denies relief . . . ." under 3142(f)(2)(B)); *see also Jerdine*, 2009 U.S. Dist. LEXIS 117919 (same). Hence, the Court **DENIES** Zhou's Motion for Bond. (ECF No. 47.) For purposes of thoroughness and alternative analysis, however, the Court shall nevertheless proceed to substantively analyze Zhou's arguments.

The court with original jurisdiction reviews a magistrate judge's detention order *de novo*. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (explaining that although the Sixth Circuit has not mandated a particular standard of review, "the majority view appears to favor . . . *de novo* review of detention orders"). In addition, the rules regarding admissibility of evidence in criminal trials do not apply to the presentation of information at a detention hearing. The Court, therefore, may rely on hearsay evidence in making its determination regarding detention. *United States v. Richardson*, No. 2:11-cr-220, 2011 U.S. Dist. LEXIS 122928, at *2 n.2 (S.D. Ohio Oct. 21, 2011) (citing 18 U.S.C. § 3142(f)(2)).

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). A defendant may be detained pending trial only when a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "Pretrial detention can be ordered based on a judicial finding of either substantial danger to the community or risk of flight; only one is required."

*United States v. Xiaorong You*, No. 2:19-CR-14, 2019 U.S. Dist. LEXIS 96776, at *5 (E.D. Tenn. June 10, 2019) (quoting *United States v. Hernandez*, No. 1:02-CR-006, 2002 U.S. Dist. LEXIS 26904, 2002 WL 1377911, at *3 (E.D. Tenn. Feb. 27, 2002) (citing *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985)). Here, the Government does not argue that Zhou is a danger to the community. Instead, the Government contends Zhou is a flight risk. Under these circumstances, the Government must prove by a preponderance of the evidence that he is a flight risk for which no condition or set of conditions will reasonably assure his presence as required at future Court events. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

The Court considers several factors in deciding whether the Government has satisfied its burden, including:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the

designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

§ 3142(g). If the Court determines that a detention order is necessary, it shall submit a written statement of the reasons for the detention. § 3142(i)(1).

The Court has assessed Zhou's motion and the Government's response, as well as the evidence and arguments presented at the November 19, 2019 hearing. The Court also reviewed all pertinent filings as well as the transcripts of the September 16, 2019 detention hearing (ECF No. 37). In light of those actions, the Court has reviewed *de novo* Magistrate Judge Jolson's detention order (ECF No. 31). Pursuant to the factors outlined in § 3142(g), the Court makes the following findings.

### B. Factors

#### 1. Nature and Circumstances of the Offenses Charged

Defendant is charged with wire fraud, stealing trade secrets, and conspiring to steal trade secrets. The crimes do not involve violence; terrorism; minors; controlled substances; interference with commerce by robbery, extortion or threat of violence; explosives; or destructive devices, so no presumption of detention applies. 18 U.S.C. 3142(e). However, this does not mean that this factor automatically leans in favor of pre-trial release. The Court must still consider the nature and circumstances of the underlying charges.

According to the Government, Zhou and Chen worked for Nationwide for ten years in positions that allowed them to create and have access to trade secrets about isolating exosomes. Six years ago, they began conspiring to sell those trade secrets to the PRC for their own personal gain without Nationwide's knowledge or permission. In furtherance of their conspiracy, they filed four patent applications in the PRC regarding exosome isolation. The Government asserts that they further created an exosome technology business in the PRC that they subsequently sold

to an American company for their own profit. Zhou quit Nationwide just two days after the sale of the business completed.

The Government has further alleged that Defendants' actions included connecting with members of the PRC's government. Namely, Zhou became a member of a group dedicated to promoting technology transfer to the PRC. (ECF No. 51 at 6.) Zhou also applied for, and received, grants with the PRC's National Natural Science Foundation. *Id*. Zhou additionally served as a paid expert for several of the PRC's talent plans. Hence, he "does not strive to suggest that his connections to the [sic] China" are minimal. (ECF no. 47 at 7.) Making those connections involved travel to the PRC. For Zhou, that travel was extensive. He went to the PRC sixteen times since May 2017. (ECF No. 30 at Ex. 11.) His last visit was two months long.

The charges are serious. And, the Government estimates that the actions of Zhou and Chen have resulted in millions of dollars of losses. (ECF No. 51 at 12.) The Government believes that amount will only grow with discovery. Each defendant is a principal player in the scheme to steal trade secrets and to sell them for personal gain. Defendants purportedly carried out their conspiracy without Nationwide's knowledge and certainly without its consent.

If convicted, Zhou will face a lengthy sentence. The Government asserts Zhou's estimated sentencing range, based upon presently known damages, would subject Zhou to the potential for 121-151 months of imprisonment. (ECF No. 51 at 12 n.4.) Each of the twenty-two wire fraud counts against him carry a maximum sentence of twenty years. (ECF 51 at 2.) The two theft of trade secrets counts carry a maximum sentence of ten years each. *Id*. The extended sentence provides a strong motive to flee. *You*, 2019 U.S. Dist. LEXIS 96776, at *9.

From all of this, the Court concludes that the nature and circumstances of the charged offenses support pretrial detention in this case.

### 2. Weight of the Evidence Against the Person

"This factor goes to the weight of the evidence of an accused's dangerousness or flight risk, not to the weight of the evidence pointing to his or her guilt." *United States v. Richardson*, No. 2:11-cr-220, 2011 U.S. Dist. LEXIS 122928, at *18 (S.D. Ohio Oct. 21, 2011) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)). In this regard, there are strong indicators that Zhou poses a significant risk of flight.

Zhou has traveled to China sixteen times since May 2017. (Ex. 11.) His last trip was two months long. Zhou's parents are in the PRC. (Zhou's Sept. 16, 2019 Detention Hearing Tr. at 6.) He has access to a large amount of money in the PRC though Beijing Jieteng Biotech. (Ex. 14; *see also* Zhou's Sept. 16, 2019 Detention Hearing Tr. at 18.) He has approximately $500,000 in cash. (Chen's Sept. 16, 2019 Detention Hearing Tr. at 22.) When he was arrested, he possessed a Chinese driver's license and other Chinse identification documents. (Ex. 12.) If Zhou flees to China, the Government would have no recourse because the United States does not have an extradition treaty with China. Consequently, the Court concludes that the weight of the evidence with respect to Zhou's risk of flight is substantial.

### 3. History and Characteristics of the Person

As noted above, when addressing this factor, the Court initially considers Zhou's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g)(3).

Turning first to Zhou's character, the Government focuses on his history of "deceptive" conduct. (ECF No. 51 at 7.) To illustrate, the Government states that he is alleged to have "exploited the trust" of Nationwide while engaging in a lengthy scheme to steal Nationwide's

intellectual property for his own monetary benefit in violation of Nationwide's internal employment policies. *Id*. at 9. He is further alleged to have lied to Nationwide about the purpose of his international travel, again in contravention of Nationwide's policies. In this regard, Zhou's counsel is correct that Zhou's alleged violation of Nationwide's policies is not a crime. But that information does reflect efforts to conceal conduct and is therefore pertinent to the risk of flight analysis. In addition, when Zhou was arrested, he allegedly lied to law enforcement by stating that he did not perform any work for the PRC's governmental agencies.

Neither side addresses Zhou's mental or physical health, so the Court proceeds to address Zhou's family ties. Zhou's parents and other family members are in the PRC. While his son is in medical school in Maryland, his son is old enough to care for himself. Moreover, Zhou presents no evidence about his relationship with his son and how that relationship ties Zhou to the United States in general and to this District in particular. Regarding Zhou's employment, he was working for a company in San Diego at the time of his arrest.

Zhou has significant monetary assets, both here and in the PRC. As noted above, the Defendants had $1.2 million in cash on hand as of earlier this year, and Zhou told law enforcement after his arrest that he had $1 million available to him in cash and stocks. (ECF No. 51 at 9.) He does not live in this District, he does not work in this District, he has no family in this District and he has no property in this District. His ties to this District are therefore non-existent. In contrast, his past conduct reveals sixteen trips to the PRC since May 2017. And, those trips fostered relationships with workers within the PRC's governmental sector who may be of assistance should Zhou be released and attempt to flee. Furthermore, Zhou had identification documents from the PRC on his person at the time of his arrest. All of this evinces strong ties to the PRC, not to this Country or District.

Favoring release are the facts that he has no criminal history and therefore was not on probation or parole at the time of his arrest. Yet, "courts have never required a prior criminal record before ordering detention." *Stone*, 608 F.3d at 950.

Zhou has no reported history of drug or alcohol abuse. Because he was arrested and detained, his record of appearing at court proceedings is not applicable.

The totality of the circumstances indicate that Zhou has substantial means and motive to flee. The record also shows extensive business and familial ties to the PRC, as well as to the PRC's government. The Court holds that the third § 3142(g) factor therefore weighs heavily in favor of detention.

### 4. Nature and Seriousness of the Danger to any Person or the Community

The Government does not contend that Defendant poses a danger to any person or the community. To the extent this fourth and final § 3142(g) factor is applicable, it weighs in favor of release.

Utilizing *de novo* review, and after weighing all the evidence and reviewing the entire record, this Court finds under the totality of the circumstances that the Government has proven by a preponderance of the evidence that Zhou poses a serious risk of flight.

### C. Conditions of Release

Having made that determination, the Court next examines whether there is or are no condition or combination of conditions of release that will reasonably assure the appearance of Zhou as required. 18 U.S.C. § 3142(g). The Court concludes that the answer to that query is no. As aptly stated by the *You* court, "[t]he crimes charged required intelligence, planning, capital, facility in deception, international communications, and international motives. The crimes carry severe penalties. Defendant has the financial resources, international connections, and incentive

to flee, rather than risk a lengthy prison sentence." *You*, 2019 U.S. Dist. LEXIS 96776, at *16. Furthermore, in-home detention in California does nothing to assuage counsel's stated concerns of difficulty of access to Zhou based on distance; if anything, it does the opposite. While in-home detention within this District would undeniably render Zhou physically closer to his selected Illinois counsel, it would still be insufficient to reduce the substantial risk of Zhou's flight. *See id*. Accordingly, Zhou will remain detained pending trial.

## IV.     CONSTITUTIONAL ANALYSIS

The second prong of Zhou's Motion for Bond asserts that his anticipated, extensive pre-trial detention will violate his due process rights. (ECF No. 47 at 7-9.) Zhou makes no claim that his three-and-one-half month long present detention constitutes such a violation. *Id*. Rather, Zhou projects that his detention will, at some point in the unidentified future, turn punitive so as to violate his due process rights. *Id*. He contends it might "take . . . years" for him and his counsel to adequately review the "staggering" discovery produced and anticipated to be produced in this case. *Id*. at 4, 7, 9. He further argues that the facility in which he is presently being detained does not have the "means to allow [him] to review *any* discovery." *Id*. at 8. (Emphasis in original.) He next asserts that because the Court determined this case to be complex, a trial date is "indefinite," which serves to further aggravate the situation. *Id*. at 9. In sum, he maintains that these factors combine to establish a potentially lengthy pre-trial detention likely to result in a denial of his due process rights. *Id*. at 7.

The Government responds first by indicating that Zhou's due process arguments fail due to the existence of the Speedy Trial Act and the Bail Reform Act. The Government then describes Zhou's due process contention as premature. In particular, the Government notes that Zhou's argument in this regard is premised upon "anticipated" discovery, a "high risk" of

13

lengthy pre-trial detention, and "speculative" conjecture regarding the trial date. (ECF No. 51 at 17.) The Government next correctly states that Zhou fails to analyze the requisite factors to determine whether his pretrial detention actually violates the due process clause. *Id*. at 17-18. And, the Government contends, conducting that analysis yields a determination that Zhou's due process rights relative to pretrial detention are not being violated. *Id*. at 17-20.

The Court finds merit in each of the Government's counterarguments. The Speedy Trial Act does hinder Zhou's pretrial detention argument. Typically, "'the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act.'" *United States v. Babichenko*, No. 1:18-cr-00258-BLW, 2019 U.S. Dist. LEXIS 132581, at *26 (D. Idaho Aug. 5, 2019) (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)). The Bail Reform Act has the same effect. The Bail Reform Act certainly provides due process protections, as under it:

> Detainees have a right to counsel at the detention hearing. 18 U. S. C. § 3142(f). They may testify [on] their own behalf, present information by proffer or otherwise, and cross-examine witnesses who appear at the hearing. Ibid. The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. § 3142(g). The Government must prove its case by clear and convincing evidence. § 3142(f). Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain. § 3142(i). The Act's review provisions, § 3145(c), provide for immediate appellate review of the detention decision.

*Salerno*, 481 U.S. at 751-52. The statute therefore facially satisfies due process concerns. *Id*.

As to ripeness, Zhou's due process arguments are predicated on future possibilities, not current certainties. And, he does not argue that his present pretrial detention has violated the Constitution. Under these circumstances, Zhou's due process contention is simply not ripe. *See*

*Hazelwood*, 2011 U.S. Dist. LEXIS 21399, at *11 (holding "numerous courts have stated that due process claims based on the anticipated length of pretrial detention are premature.") (citing cases). Even if that is not so, the Government correctly submits that Zhou does not engage in any discussion of whether Zhou's detention is constitutional. The Court does undertake that merit-based analysis, however, which results in a determination that Zhou's due process arguments fail.

"A defendant may be detained pending trial if the statutory criteria for pretrial detention are met and the detention is not otherwise unconstitutional." *United States v. Fahra*, No. 13-5296, 2013 U.S. App. LEXIS 26381, at *13 (6th Cir. Dec. 18, 2013) (quoting *Bell v. Wolfish*, 441 U.S. 520, 534 n. 15 (1979)). "If the conditions of pretrial detention 'amount to a punishment of the detainee,' however, the detention may violate the Due Process Clause." *Fahra*, 2013 U.S. App. LEXIS 26381, at *13 (quoting *Bell*, 441 U.S. at 535). "Whether pretrial detention is unconstitutionally excessive is determined on a case-by-case basis." *Fahra*, 2013 U.S. App. LEXIS 26381, at *13 (citing *United States v. Orena*, 986 F.2d 628, 630 (2d Cir. 1993)). The Court considers four factors to determine if a pretrial detention has become unconstitutionally excessive: "(1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based." *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012).

*Length of Detention*. "The length of detention alone is not dispositive and will rarely by itself offend due process." *Id.* (internal quotation marks and citation omitted). Here, Zhou has been detained for three-and-one-half months. This is not violative of Zhou's due process rights. *See United States v. Digiacomo*, 746 F. Supp. 1176, 1182 (D. Mass. 1990) (holding pretrial detention of four months, with trial not expected for another year, did not violate due process).

Moreover, this is a complex case. (ECF No. 45). "For complex cases involving extensive conspiracies, lengthy detentions have been found constitutional." *Fahra*, 2013 U.S. App. LEXIS 26381, at *14 (6th Cir. Dec. 18, 2013). As a result, this factor weighs against a constitutional violation.

*Extent of the Government's responsibility for trial's delay*. The Court can find no evidence that the Government's actions or inactions have caused any delay in the scheduling of the trial date. Instead, at the October 31, 2019 status conference, Zhou's co-counsel, Attorney Geppert, who works for the same firm as Attorney Seiden, explicitly consented to the case being designated as complex and as to the resultant indefinite trial date. Indeed, Attorney Geppert stated that "looking at the schedule candidly, [a ninety-day continuance of the trial date] doesn't work for us anymore." (Draft Tr. Oct. 31, 2019 Status Conference at p. 9.) Thus, Attorney Seiden's attempt at the November 19, 2019 hearing to distance himself from Attorney Geppert's concession on both of those points is unavailing. In addition, Zhou selected out-of-town counsel to represent him in this matter. That choice, which Zhou's counsel already admits is leading to delayed attorney-client communication and trial preparation, is not of the Government's making. This factor therefore weighs against a due process violation.

*Gravity of the charges*. "In considering the gravity of the charges, the potential length of any sentence and whether a presumption of detention applies under § 3142(g) are relevant." *Watson*, 475 F. App'x at 602. As noted *supra*, Zhou faces substantial prison time due to the seriousness of the charges. No presumption of detention is applicable in this case. But due to the serious charges and potential for a lengthy prison sentence, this aspect of the analysis favors the absence of a due process violation.

*Strength of the evidence*. For the same reasons as set forth above in the Court's § 3142(g) weight of the evidence analysis, the Court holds that the strength of the evidence against Zhou's pre-trial release is substantial.

In sum, each of the four factors weigh against a finding of a constitutional violation in this instance. The Court holds that there is no due process violation under the present circumstances.

## VI.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Bond (ECF No. 47).

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**