IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, : | |
| : | |
| Plaintiff, : | |
| : | Case Nos. 2:19-CR-163(1) and (2) |
| v. : | |
| : | JUDGE SARAH D. MORRISON |
| YU ZHOU (1) : | |
| : | |
| and : | |
| : | |
| LI CHEN (2), : | |
| : | |
| Defendants. : | |

**OPINION & ORDER**

Defendant Li Chen's Motion to Revoke Detention Order Based on a Change in Circumstances (ECF No. 84), her Supplemental Memorandum in Support (ECF No. 86), Defendant Yu Zhou's Motion to Revoke (ECF No. 88), the Government's Response (ECF No. 87) and Defendant Chen's Reply in Support of her Motion to Revoke (ECF No. 89) are before the Court for consideration. A hearing is not necessary to render a decision.

I.   **BACKGROUND**

The July 23, 2019 twenty-seven count Indictment asserts that Defendants Yu Zhou and Li Chen, whom are married, each conducted exosome research for Nationwide Children's Hospital ("Nationwide") for approximately ten years. Exosomes "are small membrane-bound sacs that are produced by human cells that carry cell-derived components such as RNA, microRNA (or miRNA), and DNA." (ECF No. 6 at ¶ 4.) They "play a key role in the research, identification and treatment of a range of medical conditions including necrotizing enterocolitis (a condition found in premature babies)," and certain types of cancer. *Id*. During their employment at Nationwide,

1

Mr. Zhou and Ms. Chen allegedly established three companies that conducted business related to exosomes without Nationwide's notice or consent. At least one of those entities conducted business in China, also without Nationwide's knowledge or approval. The Indictment alleges, *inter alia*, that Mr. Zhou and Ms. Chen, throughout the course of their employment at Nationwide, utilized those companies when stealing the trade secrets and violating the wire fraud statute. (ECF No. 6.)

Pursuant to the Indictment, arrest warrants were issued for both Zhou and Chen on July 23, 2019. (ECF No. 7.) Zhou was arrested the next day in San Diego, California, while Chen was arrested on July 29, 2019, also in San Diego, California. *Id*. 10, 11. On August 1, 2019, Zhou and Chen both stipulated without prejudice to the Government's oral motion to detain them. (19CR-163(1) ECF No. 13; 19CR-163(2) ECF No. 14.) On August 13, 2019 Magistrate Judge Lopez ordered them removed to this District for further proceedings. *Id*.

Zhou and Chen each entered a not guilty plea at their subsequent September 16, 2019 arraignments before the Court. A detention hearing, conducted by Magistrate Jolson, immediately followed the arraignment. During that hearing, the Government argued the Defendants should be detained pending completion of trial because each posed a flight risk. Magistrate Jolson heard arguments from each side and admitted sixteen exhibits from the Government and two exhibits from Chen. She noted each Defendant had deep business and familial ties with the People's Republic of China ("PRC"). She commented that the Defendants have business connections with individuals in the PRC "who have access to governmental institutions" in the PRC. (ECF No. 42 at 36.) She noted that each Defendant had extensively traveled to the PRC in the last several years. She also held that the Defendants had substantial financial resources here and in the PRC that would enable them to flee. She concurred with the

Government's observation that the United States does not have an extradition treaty with the PRC. While recognizing that the Defendants have a son attending school in Maryland, she determined that the son is an adult capable of caring for himself. She further determined that the Defendants have little to no ties with this District. In sum, Magistrate Jolson held that the Government carried its burden of proving by a preponderance of the evidence that the Defendants were flight risks and that there were no conditions of release sufficient to reasonably assure their presence going forward. Detention, she held, was necessary.

At this point, each Defendant's procedural path diverged. The Court therefore separately reviews their routes to the present.

### A. Mr. Zhou

Defendant Zhou's November 8, 2019 Motion for Bond challenged the Magistrate's detention determination. (ECF No. 47.) Therein, he argued his detention order should cease because there were conditions of release that would reasonably assure his presence at future court proceedings. Specifically, Zhou proffered that his ability to post $1,000,000 in bond secured by his home in California as well as his placement under pre-trial supervision and electronic monitoring should be sufficient to "alleviate[] . . . the Government's concerns regarding risk of flight." *Id*. at 9. He also argued that his detention removed his ability to review discovery, and therefore deprived him of the meaningful assistance of his counsel.

The Government opposed, noting that Mr. Zhou had both substantial incentive and extensive means to flee. The Government was particularly concerned with Defendant Zhou fleeing to a Chinese consulate or to the PRC itself, given the lack of an extradition treaty between the countries.

The Court held a hearing and subsequently issued a decision denying the motion for two reasons. First, the Court reviewed Magistrate Jolson's decision and determined that Mr. Zhou had presented no new material information relative to his risk of flight. Further consideration, therefore, was barred under 18 U.S.C. §3142(f)(2)(B) pursuant to *United States v. Rodriguez-Adorno*, 606 F.Supp. 2d 232, 239 (D.P.R. 2009) and *United States v. Jerdine*, No. 1:08 CR 00481, 2009 U.S. Dist. LEXIS 117919, at *6-8 (N.D. Ohio Dec. 18, 2009). Alternatively, the Court considered the 18 U.S.C. § 3142(g) factors and held that the Government proved by a preponderance of the evidence that Defendant Zhou was a flight risk for which no condition or set of conditions would reasonably assure his presence at future Court events.

Defendant Zhou's current Motion to Revoke simply adopts Ms. Chen's Motion to Revoke and the grounds in support therein as his own.

### B. Ms. Chen

Ms. Chen did not seek review of Magistrate Jolson's detention order until now. Specifically, she seeks revocation of that order and release in accordance with the conditions set forth in July 30, 2019 pre-trial services report for the Southern District of California. Those conditions include that she: (1) report to pre-trial services for supervision; (2) restrict travel to the Southern District of California; (3) surrender her passport with new passport applications being prohibited; and (4) execute a $15,000 personal appearance bond, co-signed by Mr. Zhou. Ms. Chen argues COVID-19 constitutes new and material information justifying her temporary release.

## II.    ANALYSIS

The Court first examines Ms. Chen's Motion to Revoke before turning to a review of Mr. Chen's motion of the same title.

### A. The Court Denies Ms. Chen's Motion to Revoke.

As noted, Ms. Chen urges the Court to release her due to COVID-19. Specifically, she argues her continued detention places her at a higher risk for contracting COVID-19 because jails are "incubators" for the virus. (ECF No. 84 at 4.) The Government counters that COVID-19 is irrelevant to the risk of flight analysis. (ECF No. 87.) The Court finds that the Government's argument is persuasive.

#### 1. Ms. Chen Does not Present Material Information.

Ms. Chen's motion is premised upon 18 U.S.C. § 3142(b), which provides for review of a magistrate judge's detention order. Review, however, is not automatic. Rather, 18 U.S.C. § 3142(f)(2)(B) provides a court *may* reopen a detention hearing if:

> 1) new information exists that was unknown to the movant at the time of the hearing; and 2) the new information has a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community

*United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012) (citing 18 U.S.C. § 3142(f)(2)(B)). "New and material information for § 3142(f)(2)(B) purposes consists of . . . truly changed circumstances, something unexpected, or a significant event." *United States v. Jerdine*, No. 1:08 CR 00481, 2009 U.S. Dist. LEXIS 117919, at *6-8 (N.D. Ohio Dec. 18, 2009) (citation omitted).

Ms. Chen maintains that COVID-19 qualifies as each of those. Due to the virus, the President of the United States has declared a national health emergency, the federal courthouses within this district are closed until April 6, 2020 pursuant to General Order 20-05, and Ohio's Governor has issued a statewide "Stay at Home" order. Governor DeWine's order is designed to

facilitate social distancing among individuals to slow the spread of COVID-19 and permit health care facilities to sufficiently treat the expected influx of those infected with the virus.

Ms. Chen notes that social distancing is nearly impossible in the confined setting of the county jail where she is currently incarcerated. She argues her release would reduce the risk of the jail becoming a cluster cite of COVID-19 infections which would benefit the community's health as a whole. In addition, she comments the county jail has "fewer medical resources" should she, or another inmate, become infected with COVID-19. This, she argues, makes her incarceration an even "greater health hazard." (ECF No. 84 at 6.) In contrast, the Government argues COVID-19 changes nothing because Ms. Chen remains an incurable risk of flight. (ECF No. 87 at 1.)

The Court concurs that COVID-19 presents a novel and unprecedented change in circumstances. But that change presently plays no *material* role as to whether there are conditions of release that will reasonably assure the future appearance of Ms. Chen in court. Material information is information "of a nature that would increase the likelihood that the defendant will appear at trial . . . ." *Watson*, 475 F. App'x 598, 600 (6th Cir. 2012). The mere possibility of Ms. Chen's contracting COVID-19 while inside the Delaware County Jail is of no import to her risk of flight outside of the facility.

Perhaps anticipating this deficiency, Ms. Chen cites to 18 U.S.C. § 3142(g)(3)(A) in an attempt to make COVID-19 material. (ECF No. 84 at 6.) That section requires the Court to take her physical condition into account when addressing conditions assuring appearance. Her reliance is misplaced. Section 3142(g)(3)(A) becomes a consideration only if Ms. Chen first presents new and material evidence for the Court's consideration. As noted above, she fails to

satisfy the material component. Thus, the Court **DENIES** Ms. Chen's Motion to Revoke Detention Order Based on Changed Circumstances under § 3142(f)(2)(B). *See United States v. Rivera*, No. 09-CR-619 (SJF), 2010 WL 1687069, at *3 (E.D.N.Y. Apr. 21, 2010) (defendant "has not demonstrated that the circumstances concerning his bail application have significantly changed since Magistrate Judge Orenstein's detention order so as to warrant reopening the detention hearing and releasing [defendant] on bail" under § 3142); *see also United States v. Rodriguez-Adorno*, 606 F. Supp. 2d 232, 234, 237-239 (D.P.R. 2009) (declining to reopen magistrate judge's denial of bond because defendant presented no new material evidence to the district court); *see also United States v. Perozzi*, No. 09CR117-16-SM, 2009 WL 2929292, at *2 (D.N.H. Sept. 9, 2009) (same); *see also United States v. Juarez*, No. 2:16-cr-00265-GMN-CWH-23, 2018 U.S. Dist. LEXIS 211036, at **6-7 (D. Nev. Dec. 13, 2018) (denying defendant's motion for review of magistrate's denial of defendant's motion for reopening of bond proceedings that took place before the magistrate partly for lack of new material evidence and noting the new material evidence requirement is "strictly interpreted"); *see also United States v. Bararia*, No. 2:12-cr-00236-JAD-GWF, 2013 U.S. Dist. LEXIS 173000, at *10-11 (D. Nev. Dec. 5, 2013) (denying motion to revoke detention order because of lack of new material information and noting "the district court is not required to start over in every case and proceed as if the magistrate's decision and findings did not exist.") (quoting *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990); *see also United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) (affirming district court's denial of motion to reopen bond issue that was decided by magistrate for lack of new material evidence).

### 2. Detention Remains Necessary.

Assuming, arguendo, that COVID-19 satisfies § 3142(f)(2)(B)'s new and material information requirement, the Court proceeds to a further review of Magistrate Jolson's detention order utilizing the *de novo* standard. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (explaining that although the Sixth Circuit has not mandated a particular standard of review, "the majority view appears to favor . . . *de novo* review of detention orders"). The rules regarding admissibility of evidence in criminal trials do not apply to the presentation of information at a detention hearing. The Court, therefore, may rely on hearsay evidence in making its determination regarding detention. *United States v. Richardson*, No. 2:11-cr-220, 2011 U.S. Dist. LEXIS 122928, at *2 n.2 (S.D. Ohio Oct. 21, 2011) (citing 18 U.S.C. § 3142(f)(2)).

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). A defendant may be detained pending trial only when a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "Pretrial detention can be ordered based on a judicial finding of either substantial danger to the community or risk of flight; only one is required." *United States v. Xiaorong You*, No. 2:19-CR-14, 2019 U.S. Dist. LEXIS 96776, at *5 (E.D. Tenn. June 10, 2019) (quoting *United States v. Hernandez*, No. 1:02-CR-006, 2002 U.S. Dist. LEXIS 26904, 2002 WL 1377911, at *3 (E.D. Tenn. Feb. 27, 2002) (citing *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985)). Here, the Government does not argue that Ms. Chen is a danger to the community. Instead, the Government contends that she is a flight risk. Under these circumstances, the Government must prove by a preponderance of the evidence that she is a flight risk for which no condition or set of conditions will reasonably assure her presence as

required at future Court proceedings. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

The Court considers several factors in deciding whether the Government has satisfied its burden, including:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

§ 3142(g). If the Court determines that a detention order is necessary, it shall submit a written statement of the reasons for the detention. 18 U.S.C. § 3142(i)(1).

The Court has assessed Chen's motion, her supplemental memorandum in support, the Government's opposition, Ms. Chen's Reply and the transcripts of the September 16, 2019

detention hearing (ECF No. 42). In light of those actions, the Court has reviewed Magistrate Judge Jolson's detention order (ECF No. 29) *de novo*. Pursuant to the factors outlined in § 3142(g), the Court makes the following findings.

- *Nature and Circumstances of the Offenses Charged*. Ms. Chen is charged with wire fraud, stealing trade secrets and conspiring to steal trade secrets. The crimes do not involve violence; terrorism; minors; controlled substances; interference with commerce by robbery, extortion or threat of violence; explosives; or destructive devices, so no presumption of detention applies. 18 U.S.C. § 3142(e). However, this does not mean that this factor automatically leans in favor of pre-trial release. The Court must still consider the nature and circumstances of the underlying charges.

According to the Government, Defendants worked for Nationwide for ten years in positions that allowed them to create and have access to trade secrets about isolating exosomes. Six years ago, they began conspiring to sell those trade secrets to the PRC for their own personal gain without Nationwide's knowledge or permission. In furtherance of their conspiracy, they filed four patent applications in the PRC regarding exosome isolation. They organized an exosome conference in China for which they served as presenters. (ECF No. 42.) During that conference, they disclosed Nationwide's exosome trade secrets. The Government asserts that they further created an exosome technology business in the PRC that they subsequently sold to an American company for their own profit.

The Government has further alleged that Defendants' actions included connecting with members of the PRC's government. Namely, the PRC paid Ms. Chen for her expert services in the area of exosome research. She also applied for, and received, grants with the PRC's National Natural Science Foundation. *Id*. Making those connections involved travel to the PRC. For Chen,

that travel was extensive. She went to the PRC six times in the year preceding her initial apprehension. One of those trips lasted a full month.

The charges are serious. And, the Government estimates that the actions of Zhou and Chen have resulted in millions of dollars of losses. (ECF No. 51 at 12.) The Government believes that amount will only grow with discovery. Each Defendant is a principal player in the scheme to steal trade secrets and to sell them for personal gain. Defendants purportedly carried out their conspiracy without Nationwide's knowledge and certainly without its consent.

If convicted, Ms. Chen will face a lengthy sentence. The Government asserts her estimated sentencing range, based upon presently known damages, would subject her to the potential for 121-151 months of imprisonment. (ECF No. 87.) Each of the twenty-two wire fraud counts against her carry a maximum sentence of twenty years. The two theft of trade secrets counts carry a maximum sentence of ten years each. *Id*. The extended sentence provides a strong motive to flee. *You*, 2019 U.S. Dist. LEXIS 96776, at *9.

From all of this, the Court concludes that the nature and circumstances of the charged offenses support Ms. Chen's continued pretrial detention.

● *Weight of the Evidence Against Ms. Chen*. "This factor goes to the weight of the evidence of an accused's dangerousness or flight risk, not to the weight of the evidence pointing to his or her guilt." *United States v. Richardson*, No. 2:11-cr-220, 2011 U.S. Dist. LEXIS 122928, at *18 (S.D. Ohio Oct. 21, 2011) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)). In this regard, there are strong indicators that Ms. Chen poses a significant risk of flight.

Ms. Chen traveled to China six times in the year preceding her apprehension. One of those trips lasted a full month. Ms. Chen's parents and brother are in the PRC. She has access to a large amount of cash both in the United States and in the PRC. If Ms. Chen flees to the PRC, or

to a Chinese consulate in the United States, the Government would have no recourse because the United States does not have an extradition treaty with China. Consequently, the Court concludes that the weight of the evidence with respect to Ms. Chen's risk of flight is substantial.

- *History and Characteristics of the Person.* As noted above, when addressing this factor, the Court initially considers Ms. Chen's character, physical condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g)(3).

Turning first to Ms. Chen's character, the Government focuses on her history of "deceptive" conduct. (ECF No. 87). To illustrate, she is alleged to have exploited the trust of Nationwide while engaging in a lengthy scheme to steal Nationwide's intellectual property for her own monetary benefit in violation of Nationwide's internal employment policies. She is further alleged to have lied to Nationwide about the purpose of her international travel, again in contravention of Nationwide's policies. In addition, when Ms. Chen was arrested, she allegedly lied to law enforcement about her involvement with the PRC's governmental agencies and her business in the PRC. She further lied about not having Chinese patents. (ECF No. 42 at 24.)

At this point, the Court returns to Ms. Chen's COVID-19 contention. While Ms. Chen and the Government disagree as to whether § 3142(g)(3)(A)'s mention of "physical condition" incorporates "health," it is a distinction without a difference at this point as Ms. Chen has not been diagnosed as having the virus. Further, Ms. Chen makes no mention of any physical condition necessitating attention or of a positive COVID-19 diagnosis at her facility. Instead, she offers nothing but the possibility that *she* might contract COVID-19 while in the jail as the basis for her motion. Her focus is off.

> A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. The risk of harm to the defendant does not usually bear on this analysis.

*United States v. Henry Clark*, No. 19-40068-01-HLT, 2020 U.S. Dist. LEXIS 51390, at *8 (D. Kan. Mar. 25, 2020). Additionally, "a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation." *Id*. at *9 (in context of 18 U.S.C. § 3142(i)).

Turning to familial ties, Ms. Chen's parents and brothers are in the PRC. While her son is in school in Maryland, her son is old enough to care for himself. *See* ECF No. 37 at 9. Moreover, Ms. Chen presents no evidence about her relationship with her son and how that relationship ties her to the United States in general and to this district in particular.

Ms. Chen has significant monetary assets, both here and in the PRC. The Defendants had $1.7 million in cash on hand in 2019. (ECF No. 42 at 22.) Additionally, she does not live in this district, does not work in this district, has no family in this district and has no property in this district. Her ties to this district are therefore non-existent. In contrast, her past conduct reveals six trips to the PRC in the year before her apprehension. And, those trips fostered relationships with workers within the PRC's governmental sector who may be of assistance should Ms. Chen be released and attempt to flee. All of this evinces strong ties to the PRC, not to this country or district.

Favoring release are the facts that she has no criminal history and therefore was not on probation or parole at the time of his arrest. Yet, "courts have never required a prior criminal record before ordering detention." *Stone*, 608 F.3d at 950.

Ms. Chen has no reported history of drug or alcohol abuse. Because she was arrested and detained, and because she has no criminal history, her record of appearing at court proceedings is not applicable.

The totality of the circumstances indicate that Ms. Chen has substantial means and motive to flee. The record also shows extensive business and familial ties to the PRC, as well as to the PRC's government. The Court holds that the third § 3142(g) factor therefore weighs heavily in favor of detention.

- *Nature and Seriousness of the Danger to any Person or the Community.* The Government does not contend that Defendant poses a danger to any person or the community. To the extent this fourth and final § 3142(g) factor is applicable, it weighs in favor of release.

Utilizing *de novo* review, and after weighing all the evidence and reviewing the entire record, this Court finds under the totality of the circumstances that the Government has proven by a preponderance of the evidence that Ms. Chen poses a serious risk of flight.

Having made that determination, the Court next examines whether there is or are no condition or combination of conditions of release that will reasonably assure the appearance of Ms. Chen as required. 18 U.S.C. § 3142(g). The Court concludes that the answer to that query is no.

Ms. Chen seeks in-home detention with electronic monitoring in California. But, Governor DeWine's Stay at Home order nullifies that option. At the detention hearing, Ling Zhao and Hongwu Zhang offered to house Ms. Chen with electronic monitoring. (ECF No. 42 at 30.) They are Ms. Chen's friends whom reside in the district. *Id*. Ms. Chen makes no mention of this in her Motion. Even if that option still exists, it is insufficient to negate her flight risk. As

Magistrate Judge Jolson concluded, simply because Zhao and Zhang would allow Ms. Chen to reside with them is not "enough to overcome all of [her] substantial ties to China." *Id.* at 37.

In sum, the *You* court aptly states, "[t]he crimes charged required intelligence, planning, capital, facility in deception, international communications, and international motives. The crimes carry severe penalties. Defendant has the financial resources, international connections, and incentive to flee, rather than risk a lengthy prison sentence." *You*, 2019 U.S. Dist. LEXIS 96776, at *16. Those facts are present here. Accordingly, Ms. Chen will remain detained pending trial and her Motion to Revoke is **DENIED**. (ECF No. 84.)

### B. The Court Denies Mr. Zhou's Motion to Revoke.

Mr. Zhou adopts Ms. Chen's Motion to Revoke in full. His case, however, is in a different procedural posture because he previously appealed Magistrate Judge Jolson's detention order. That appeal was unsuccessful. For the Court to have discretion re-screen his Motion to Revoke now, he must offer new and material information as § 3142(f)(2)(B) directs. *Watson*, 475 F. App'x at 600 (6th Cir. 2012) (citing 18 U.S.C. § 3142(f)(2)(B)). But the Court holds above that COVID-19 is not material. His motion therefore fails under § 3142(f)(2)(B) and *Watson*.

To avoid that result, Mr. Zhou first directs the Court's attention to *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 U.S. Dist. LEXIS 47846 (S.D.N.Y. Mar. 18, 2020). (ECF No. 88 at 2). The *Stephens* court considered speculative COVID-19 concerns in the context of a motion to reopen detention under § 3142(f) based on a change in circumstances. While that court allowed release, it did not do so based solely on COVID-19 concerns. Instead, the *Stephens* court relied on new information as to the danger the defendant posed to the community. Because community danger is not at issue in this case, *Stephens* fails to buttress Mr. Zhou's request for release.

Mr. Zhou's reliance upon *United States v. Perez*, 2020 U.S. Dist. LEXIS 51867 (S.D.N.Y. Mar. 19, 2020), fares no better. Perez sought temporary release under the "compelling reasons" language set forth in 18 U.S.C. § 3142(i). The Court granted the motion because of the "unique confluence of serious health issues and other risk factors facing" Perez. Those included, but were not limited to, Perez's "serious progressive lung disease and other significant health issues, which place[d] him at a substantially heightened risk of dangerous complications should he contract COVID-19 . . . ." *Id*. at * 1. Yet, Mr. Zhou's motion is not premised upon § 3142(i), and he has no documented health concerns that would significantly raise his risk of COVID-19 complications should he become stricken with the virus. For these reasons, the Court does not find *Perez* instructive in this instance.

### III. CONCLUSION

The Court **DENIES** Defendants' Motions to Revoke. (ECF Nos. 84, 88).

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**